A08A0292. GRIFFIN v. THE STATE.
(662 SE2d 171)

ELLINGTON, Judge.

A Hall County jury found Walter Griffin guilty beyond a reasonable doubt of possession of cocaine with intent to distribute, OCGA § 16-13-30; giving a false name to officers, OCGA § 16-10-25; false imprisonment, OCGA § 16-5-41; battery, OCGA § 16-5-23.1; and criminal trespass, OCGA § 16-7-21 (b).[1] He appeals from the denial of his motion for new trial, contending the evidence was insufficient to

---

[1] The charges arose from two independent incidents within a three-week period in 2005. The State charged Griffin with possession with intent and giving a false name in one indictment, and the remaining offenses in a separate indictment. Griffin moved to join the offenses for trial, and, following a hearing, the court granted the motion.

support his convictions for possession with intent, giving a false name, and false imprisonment. He also argues that the trial court improperly limited his cross-examination of one of the State's witnesses. Finding no error, we affirm.

1. Griffin contends the evidence was insufficient to support a finding that he possessed cocaine with the intent to distribute. Although he concedes that he possessed crack cocaine at the time he was arrested, he argues that he was addicted to crack cocaine and the cocaine in his possession was for his personal use only. According to Griffin, the State presented no evidence that he intended to sell the cocaine to others, such as showing that the cocaine "was of an amount or packaged in a manner indicating it was for distribution rather than for personal use."

When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). It is the function of the jury, not this Court, to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001). Viewed in this light, the record reveals the following facts.

At approximately 11:00 a.m. on March 15, 2005, two officers with the Hall County Multi-Agency Narcotics Squad went to a neighborhood to investigate reports of crack cocaine sales in the area. According to one of the officers, the neighborhood was known as a "high crack cocaine distribution area." The officers approached Griffin and three other men who were standing in a yard. One of the officers identified himself to Griffin, told Griffin for whom he worked, asked Griffin about drug activity in the area, and asked Griffin if he had any drugs or weapons on his person. Griffin responded that he did not. The officer then asked Griffin for consent to search him, and Griffin said "go ahead."[2] During the search, the officer found a "Tic Tac" box which contained approximately 25 pieces of a substance that was later determined to be crack cocaine and which weighed a total of about 1.68 grams. The officer also found a two-way radio in Griffin's pocket during the search. Griffin did not

---

[2] Griffin does not challenge the legality of the search on appeal.

have a "crack pipe" or other smoking paraphernalia in his possession, nor was there any evidence that Griffin appeared to be under the influence of any drug at the time of the search. In addition, Griffin's former girlfriend testified that she had never seen Griffin smoke crack cocaine.

The officer testified that he had investigated crack cocaine sales in the area as an undercover officer for over a year and was familiar with the price of crack cocaine in Hall County. According to the officer, drug sellers typically sell rocks of crack cocaine that are similar to the average size of the rocks found in Griffin's possession and that such rocks sell for $20 each. He also testified that sellers usually hand the rocks to customers without first wrapping the rocks in little, individual, "sanitized" packets. The officer testified that crack users typically drive to the area, buy one rock of cocaine, go home and smoke it, then return to buy another rock "when that high ends," and that they often repeat the process during the night. In addition, the officer testified that drug sellers often use two-way radios to warn other sellers that there are police officers patrolling the area or to notify their drug suppliers when they have run out of cocaine to sell so the supplier can bring them some more.

Under the circumstances, the evidence presented was sufficient for a rational factfinder to find Griffin guilty beyond a reasonable doubt of possession of cocaine with the intent to distribute. *Barker v. State*, 226 Ga. App. 747, 747-748 (2) (487 SE2d 494) (1997); *Palmer v. State*, 210 Ga. App. 717, 717-718 (437 SE2d 490) (1993).

2. Griffin argues that the evidence was insufficient to support his conviction for giving a false name to the officers, contending that there was no evidence that the name he gave them was, in fact, false. This argument lacks merit.

Under OCGA § 16-10-25, "[a] person who gives a false name, address, or date of birth to a law enforcement officer in the lawful discharge of his official duties with the intent of misleading the officer as to his identity or birth date is guilty of a misdemeanor." A conviction for violating OCGA § 16-10-25 must be supported by "some evidence that the name given in the subject incident was false. Generally this is established by some proof of the defendant's real name." (Citations omitted.) *Agony v. State*, 226 Ga. App. 330, 333 (4) (486 SE2d 625) (1997).

The evidence showed that, at the time of his arrest, Griffin told the officers that his name was "James Edward White." About two hours later, the officers discovered that his name was, in fact, "Walter James Griffin." At trial, Griffin's counsel asked one of the officers if he had "ever been made aware" that Griffin had been adopted as a child and that Griffin's "adopted name" had been "James Edward White." The officer responded, "No." Counsel then

suggested that there might be a birth certificate showing that Griffin had been named "James Edward White" at birth, although counsel did not produce such a birth certificate at trial. Counsel later suggested to the jury that Griffin had accidentally given his "birth name" to the officer. The trial court instructed the jury on the affirmative defense of accident or misfortune.

As the transcript shows, there was no evidence that "James Edward White" was the name on Griffin's original birth certificate, that Griffin ever used that name other than on the day in question, or that Griffin had, in fact, been adopted. It is axiomatic that an attorney's questions to witnesses and arguments to the jury during trial are not evidence. See *Atkins v. State*, 253 Ga. App. 169, 171 (2) (c) (558 SE2d 755) (2002) ("what the attorneys say in their arguments does not constitute evidence, [although] attorneys' questions provide the context for considering the witnesses' responses, which is evidence"); see also *Parker v. State*, 248 Ga. App. 748, 749-750 (2) (548 SE2d 634) (2001).[3] Further, even if "James Edward White" *had* been Griffin's name at birth, once his new parents adopted him and changed his name, he was no longer "James Edward White" because his *legal* name became "Walter James Griffin." See OCGA § 19-8-19 (the effect of a decree of adoption). Therefore, Griffin's argument that his "birth name" of "James Edward White" was not technically a "false" name for the purpose of finding him guilty of giving a false name to an officer lacks merit.

In light of the evidence presented, the jury was authorized to reject Griffin's defense that he accidentally gave the wrong name to the officer and to find that Griffin gave the officer a false name with the intent of misleading him. *Richardson v. State*, 256 Ga. App. 30, 32-33 (2) (567 SE2d 693) (2002); see *Lewis v. State*, 283 Ga. 191, 192 (1) (657 SE2d 854) (2008) (given the evidence presented, the jury was authorized to reject the defendant's accident defense, because the weight of the evidence and credibility of the witnesses are matters solely within the province of the jury).

3. Griffin complains that there was insufficient evidence to support his conviction for false imprisonment. As with Griffin's previous contention, this argument is also completely lacking in merit.

---

[3] In *Parker*, the trial court judge gave the jury an illustration about what constitutes evidence in the case. 248 Ga. App. at 749-750 (2). The judge warned the jury about how attorneys sometime use a "yellow rose" technique, in which an attorney repeatedly cross-examines witnesses about whether they saw yellow roses at the scene of the incident, even though the roses never existed and were completely fabricated by the attorney. Id. Due to the attorney's incessant questioning, however, some of the jurors become convinced that the roses were there, "even though there hasn't been one single smidgen of testimony to that effect from the witness stand." Id. at 750 (2).

Under OCGA § 16-5-41 (a), "[a] person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." The evidence presented showed that, on the morning of February 25, 2005, Griffin went to the home of the victim, his former girlfriend, uninvited. She refused to let him into her house, so he kicked in the front door and went inside. The victim ran to another door but, before she could get outside, Griffin grabbed her and held the door so she could not leave. Then he took her into the bedroom, pushed her onto the bed, pinned her arms down with his knees, hit and choked her, and told her that he was going to kill her. The victim eventually was able to get away from Griffin, and she ran outside, where Griffin caught up with her and grabbed her foot. She fell down and he pushed her face in a mud puddle, then he pulled off her clothes, grabbed her hair, and dragged her over gravel, up the stairs, and back into the house. Griffin carried her into a bathroom, filled the bathtub with water, and put her into the tub. She stayed there with the hope that Griffin, who at that point was sitting at the front of the house, would "calm down." When she eventually asked Griffin if she could go outside to the car, he told her, "No." She convinced him to let her walk out to her car, however, by telling him that she would not leave, but, when she went to the car, she got in and drove away. She went to a gas station and called the police to report the attack.

This evidence is sufficient for a rational factfinder to conclude that Griffin was guilty beyond a reasonable doubt of false imprisonment. *Rehberger v. State*, 235 Ga. App. 827, 827-828 (1) (510 SE2d 594) (1998).

4. Griffin argues that the court erroneously refused to allow him to impeach the credibility of the victim by cross-examining her about whether she knew that her current boyfriend was a "drug dealer." Specifically, he argues that he wanted to impeach her testimony about being "pure-as-the-driven-snow" by questioning her about consorting with a "known drug dealer."

At trial, the victim testified that, after she and Griffin broke off their relationship, she started dating another man. Later, while Griffin's counsel was cross-examining the victim about her volatile relationship with Griffin, Griffin's counsel abruptly switched gears and asked her if her current boyfriend is a drug dealer. She responded, "I don't know." The State objected to the question as irrelevant, and the court sustained the objection. Then, out of the presence of the jury, Griffin's counsel told the court that he had received information that the boyfriend had been arrested on a crack

cocaine charge,[4] and counsel argued that it was highly relevant to the victim's credibility that she had denied using crack cocaine for several years and, yet, had a boyfriend who had been arrested for possessing the drug. After the State continued to argue that it was not relevant to the issues in the instant case, Griffin's counsel asked the court to allow him to ask the victim one question about whether she knew that her boyfriend had been arrested for possessing crack cocaine, and the court agreed to let him do so outside the presence of the jury. When counsel asked the victim the question, she responded, "No, sir, I don't know."

"Trial courts are vested with wide discretion in admitting evidence and will not be reversed in the absence of an abuse of discretion." (Citations and punctuation omitted.) *Eyo v. State*, 208 Ga. App. 24, 25-26 (2) (430 SE2d 161) (1993). Under the circumstances presented, we discern no abuse of discretion in the court's refusal to allow Griffin's counsel to cross-examine the victim about whether she knew about her boyfriend's alleged arrest for cocaine possession. Id.

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED MAY 1, 2008 —
RECONSIDERATION DISMISSED MAY 22, 2008

*Mary Erickson*, for appellant.
*Lee Darragh, District Attorney, John G. Wilbanks, Jr., Assistant District Attorney*, for appellee.

---

[4] Notably, Griffin's counsel did not proffer any evidence to show that the victim's boyfriend had, in fact, been arrested for possessing crack cocaine. His assertion that he had received "information" about such arrest is not evidence. *Atkins v. State*, 253 Ga. App. at 171 (2) (c). Moreover, even if he had proffered evidence to show an arrest for possessing crack cocaine, it would not support his claim that the victim's boyfriend was a "drug dealer." Further, it is undisputed that the boyfriend was not present when any of the acts that were at issue at trial occurred, nor did the boyfriend testify at Griffin's trial.